Henry Clay Greenberg, J.
Plaintiff moves, pursuant to sections 150, 151 and 162 of article 11 of the General Corporation Law, and section 974 of article 60 of the Civil Practice Act, for the appointment of a receiver, pendente lite, of the assets and property interests and rights of the corporate defendant and for a temporary injunction against the individual defendants as well as the corporate defendant from selling or otherwise disposing of any of the assets or funds of the corporation.
The action is a derivative suit in equity by plaintiff as a stockholder, officer and director of the defendant corporation Atlantis Films, Inc. Its object, as pleaded in the single cause of action set forth in the complaint, is to procure equitable relief as follows: (1) that the individual defendants account to the corporate defendant for substantial sums of money of the corporation alleged to have been wrongfully diverted, appropriated and converted by each of them, acting in concert with each other, and for monetary damages sustained by the corporation as a result of such alleged wrongful misconduct and wrongdoing resulting in waste, dissipation and depreciation of corporate funds and assets; (2) that the individual defendants be enjoined from taking, receiving, using or otherwise disposing of any of the funds or assets of the corporate defendant: (3) that each of such individual defendants be declared trustees ex maleficio of the defendant corporation concerning all of its funds, assets and properties for which each of them might be found accountable to the corporate defendant; (4) that such individual defendants be enjoined from interfering with the conduct of the affairs of the defendant corporation by plaintiff, its president, general manager and as one of its stockholders; (5) that the defendant corporation be dissolved and liquidated as provided by law; and (6) that a receiver of its assets and affairs be appointed.
Succinctly stated, the coming into being of the corporate defendant, its corporate life and business affairs revolve about its acquisition of the exclusive distribution and exhibition rights in the United States, its possessions and elsewhere of a certain sound and French dialogue feature motion picture, which was produced in France and was entitled “ Manina, La Filie *500 Sans Voile ”. This picture stars the now world famous actress Brigitte Bardot. It was produced in France in or about 1952, when she was about 16 years of age and had not yet attained world fame as a film star. The title of the said film was changed and is now better known as “The Girl in the Bikini”. Plaintiff’s allegations, set forth extensively and in detail in his complaint, affidavits and exhibits upon the instant motion, reveal Mm as the prime mover in obtaining the purchase of the film for United States and its possessions distribution and negotiations with the defendants Morris, Milco and Milkowitz for the formation of the corporate defendant to acquire same, and also the respective interests of all in the corporation. The details of the background of events preceding the acquisition of the picture rights, formation of the corporate defendant and subsequent events leading to this lawsuit and instant application are much too voluminous to relate here. Some of the salient features, however, sufficient for the purposes of this motion, reveal that by the promotion agreement of January 29, 1958 between plaintiff and the individual defendants Morris, Milco and Milkowitz, it was expressly provided that a New York corporation be formed; that there should be issued 200 shares of stock of no par value by such corporation; that plaintiff, Morris, Milco and Milkowitz should each receive from such corporation shares of stock so that each of them would be the owner of 50 shares of voting common stock of the corporate defendant representing a 25% proprietary interest in the corporation and its profits. It was also provided that the corporation should be subject to article 9 of the Stock Corporation Law so that a unanimous vote by all of the aforesaid stockholders and directors would be required at meetings. A further provision was made that there be a board of directors of three persons and it appears that it was contemplated and was the intent and purpose of the promotion agreement that the board of directors duly elected by the four equal stockholders (plaintiff, Morris, Milco and Milkowitz) would unanimously formulate and execute policies relating to the management of the business, its assets and affairs. Subsequently, and on or about January 30, 1958 plaintiff succeeded in obtaimng a written license agreement for the “ BikiM ” film which he later assigned over to the corporate defendant according to his agreement with Morris, Milco and Milkowitz.
Omitting the details of the mechanics involved in the setting up of the corporate defendant and the work entailed in getting the “ BikiM ” picture into successful distribution, we now find the corporation prospering but success causing friction. Irrec *501 oncilable disputes and differences have arisen between plaintiff on the one hand as equal stockholder with Morris, Milco and Milkowitz on the other hand, and also between plaintiff, Morris and Milco as the sole three executive officers and directors of the corporation. It might be noted that Morris, Milco and Milkowitz are brothers. It appears from the affidavits here presented that there is a hopeless deadlock between plaintiff and the three individual defendant brothers, which goes far beyond differences of opinion or disagreement as to internal management of a corporation, but rather seriously precludes them in effective and proper discharge of their corporate responsibilities and functions; that the three brothers are apparently acting in conspiracy, to the detriment of the property interests of the corporation and causing conversion and waste of corporate funds. The funds and assets of the corporation consist of film rentals and proceeds which have been derived by reason of the marketing and commercial distribution in the United States, Canada and elsewhere of the aforementioned “Bikini” film. Although plaintiff, because of his friendship with the owner of the film, was able to negotiate the acquisition and purchase of the distribution rights stated for the benefit of the corporation and individual defendants, all for the small sum of $6,000 (which was supplied by Morris and his two brothers), the subsequent exploitation of the film by the corporation produced upwards of $161,000 during the short period of July, 1958 to April, 1959. It further appears that the corporation will, within the period of the next 6 to 12 months, receive an aggregate of $600,000 to $800,000 for-its percentage share in the rental and revenue anticipated from the continued distribution and licensing of the said 11 Bikini ’ ’ film.
Plaintiff charges that he now has been frozen out of the corporation’s functions and business affairs although he is its president and general manager; a director and stockholder; that he has been physically ousted from the offices of the company and denied physical access thereto. Defendants admit they locked him out and further aver that they will continue to lock him out. Plaintiff further alleges physical threats of violence against his person by Milco and Morris. He has been denied access to any books or records of the corporation although, as stated, he is president of the company, and director and stockholder. The by-laws of the corporation provide that the president should be one of the signatories on all checks issued for any items and that the treasurer shall countersign all checks signed by the president. Plaintiff avers that on or about January 9, 1959 the individual defendants, through their *502 creation of a spurious and fraudulent bank resolution, without his knowledge or consent, made it possible for them to withdraw funds amounting to at least $45,000 from the corporate bank account, and that, by other diverse acts looted the treasury, diverted and converted for the benefit of themselves and otherwise caused wastage of its funds and assets. In this connection plaintiff avers that they caused excessive compensation to be paid out to Morris, Milco and Milkowitz, McCue and their friends over plaintiff’s protests; that they paid to one Young the sum of $5,000 for editing and cutting the ‘ ‘ Bikini ’ ’ film, whereas Young had told plaintiff that his charge for that work would not be more than $1,000; that it was not necessary to hire the defendant McCue, since his services were not necessary to the company to distribute the popular “ Bikini ” film. Plaintiff further avers that as of May, 1959 the corporation had $70,000 on deposit, where as by June 16, 1959 only about $25,000 remained, although the corporation had no obligations to the extent of that difference. Excessive salaries it is alleged are paid out to the individual defendants far in excess of their work, time and contribution to the corporate business. Defendants admit that they have withdrawn the bulk of the corporation’s funds from the original depository bank and that they have redeposited the funds in another bank whose name and address they refuse to reveal to plaintiff.
"While defendants categorically deny plaintiff’s charges and specifications in extensive opposing affidavits, the factual picture presented by all of the affidavits and exhibits indicate, in my opinion, that many of the charges of waste, dissipation of corporate funds and improper management have foundation in fact for the charges made and that the business and assets of the corporation should be preserved until ultimate disposition of this litigation. The court may appoint a receiver notwithstanding the present solvency of a corporation where there is danger of dissipation and waste of its assets and funds (Matter of Jack Martin Auto Sales, 63 N. Y. S. 2d 686; Nadrich v. Nagelberg, 8 Misc 2d 339; Matter of Hy-Lite Plastics, 8 Misc 2d 101). The charges by plaintiff are serious and are well presented by sufficient convincing factual averments and documentary proof. In light of all of the foregoing, I am satisfied that the relief requested is warranted and that until trial plaintiff should have the interim protection of the court for the preservation of the corporate assets. The application for temporary injunctive relief is granted. The application for appointment of a receiver will be granted unless defendants, within five days after the date of publication of this decision in the New York Law *503 Journal, reinstate plaintiff to Ms position, duties and privileges as president and director of the corporation with free access to the offices of the corporation and its books and records and the right to sign checks and engage in the corporation’s business which he previously had under the promotion agreement. In the event of failure of defendants to comply wtih this condition, plaintiff may settle an order for appointment of a receiver. If either party desires an early trial, same may be provided for in the order to be settled herein. Suggestions as to the amount of the bond will be entertained on the coming in of the order.